McRAE, Justice,
dissenting:
¶ 64. Christopher W. Hughes and Eric Beasley (cobectively “Hughes”) had vested constitutional and contract rights to continue their studies at the University of Mississippi Medical Center (“UMC”) under the rules and regulations existing at the time of his admission and enrollment. Hughes incurred substantial expenses in attending UMC and completed all other requirements for promotion, except for passing the USMLE. It was a direct violation of Hughes’s contract rights to change the rules after two years of medical school, which led to his expulsion. Hughes should be reinstated and allowed to continue his work towards graduation. Accordingly, I dissent.
¶ 65. When Hughes applied and was accepted to medical school at UMC in August of 1992, all students were required to maintain a grade point average of 75 or higher in order to advance to the next year and eventually graduate. The United States Medical Licensing Examination (“USMLE”) was not part of that requirement. The USMLE was also not a requirement for promotion or graduation. The USMLE was a requirement for medical license but not a requirement to get an MD degree. Two years later, during Hughes’s third year of medical school, the rules were amended to require students not only to have a 75 average but also to have passed the USMLE. Having already taken and failed the test twice prior to this amendment, Hughes took the test a third time and failed, resulting in his expulsion.
¶ 66. A violation of Hughes’s due process occurred with the rule change, as it was against his contractual interest. Hughes had already incurred substantial monetary *545 debt in relying upon the original rules. While it is true that states are given wide latitude in setting academic standards, that is not the issue. The issue is whether such changes can affect a student who had already completed two years of medical school. The majority is forced to rely on . law from other jurisdictions in its decision, as this state affords no guidance in cases dealing with a university drastically changing its educational requirements “midstream.” However, none of those cases are on point with the issue at hand. Perhaps a better way of analyzing this case is to look at the policy this state has adhered to in similar circumstances involving its universities.
¶ 67. Analogous to this scenario was the removal of the “diploma privilege” from University of Mississippi School of Law graduates some two decades ago. Prior to 1979, graduates of the University of Mississippi School of Law were admitted to practice law in Mississippi upon graduation without being required to take and pass the state’s bar exam. When the change went into effect, students currently enrolled at the university were exempted from the rule and allowed to practice law upon graduation without passing the bar ' exam. Hughes should be afforded the same accommodation.
¶ 68. The majority points to and focuses on the fact that Hughes earned grades while attending medical school which were barely high enough to move on to the next year. However, Hughes’s grades were high enough to get promoted, and he would not have been dismissed from school had the new requirement not been implemented.
¶ 69. The prohibition against taking the property of another without due process is created in order to protect vested rights. “[v]ested in rights include not only legal and equitable title to enforcement of demand, but also an exemption from new obligations created after the right is vested.” Vested rights may be created by common law, statute or contract. The chancery court applied this reasoning in ordering that Hughes be allowed to take the exam again. The court wrote:
[It] is grossly unfair to accept the proposition that an institution such as UMC has the unfettered liberty to modify the graduation requirements well into the medical course. While respecting the long-accepted right of an academic institution to manage its academic affairs, the court must note that in this case, the reliance interest of Mr. Hughes to be governed in his course progress as set out in the catalog then in force at the time of his admission was breached.
Had Mr. Hughes known in advance that UMC would limit the number of times a student could sit for the USMLE he would have utilized his available chances more effectively. Here, UMC changed the rules mid-stream, and naturally altered the standards Mr. Hughes thought he needed to maintain in his medical school course. This radical change of requirements is unreasonable and should not stand.
¶ 70. Neither the university nor the majority have shown that the change in regulations was reasonable as it applied to Hughes. The contractual agreement between Hughes and UMC provided that he enter medical school and abide by the regulations in existence at that time in order to receive a medical degree. UMC breached this contract and stripped Hughes of his vested rights in an education and a medical degree. Accordingly, I dissent.
BANKS, P.J., JOINS THIS OPINION.